DOMENICO A. CICCHINO AND BONITA D. CICCHINO HIS WIFE, PLAINTIFFS–RESPONDENTS–CROSS–APPELLANTS, v. TOWNSHIP OF BERKELEY HEIGHTS PLANNING BOARD, DEFENDANT–APPELLANT–CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 24, 1989—Decided December 6, 1989.

Before Judges PRESSLER, GRUCCIO and LANDAU.

*Barry M. Hoffman* argued the cause for appellant-cross-respondent (*Bernstein, Hoffman & Clark,* attorneys).

*Raymond P. D'Uva,* argued the cause for respondents-cross-appellants.

The opinion of the court was delivered by

GRUCCIO, J.A.D.

This is an action in lieu of prerogative writs. Defendant Township of Berkeley Heights Planning Board (Board) appeals from a judgment of the Superior Court, Law Division, which partially reversed and remanded the Board's denial of plaintiffs Domenico A. Cicchino and Bonita D. Cicchino's application for permission to subdivide property owned by them and their neighbors. The trial judge concluded that the denial was proper as to all issues except for one; *i.e.,* whether plaintiffs satisfied the requirements of *N.J.S.A.* 40:55D–70(c)(2). He remanded the case to the Board for consideration of this issue. Plaintiffs cross-appeal from the trial judge's finding that the Board was correct in its determinations except as to the remanded issue. Plaintiffs argue that the Board's decision should be reversed in its entirety.

For the reasons hereinafter stated, we conclude that the Board was entirely correct in its denial of the application and that its action should be affirmed.

Plaintiffs own a parcel of property in the Township of Berkeley Heights identified on the tax maps of the township as Lots 5 and 5.01 of Block 1108, known as 47 Hamilton Avenue. The lots, which are considered merged due to their being substandard,[1] are presently improved with a one-story dwelling and an accessory building or shed. The parcel is located on the southwest corner of the intersection of Hamilton and Rutgers Avenues. The existing single-family residence in which plaintiffs reside is located on Lot 5 which fronts on Hamilton Avenue. The easterly side of the house "fronts" on Rutgers Avenue.

---

[1] Section 3.1.5 of *Berkeley Heights Municipal Land Use Procedure Ordinance* provides that:

When two or more adjoining lots are under the same ownership, and should one or more of said lots not conform with the minimum area and/or dimension requirements for the zone in which it is located, the lots shall be considered as a single lot and the provisions of this ordinance shall hold.

Lot 5.01, which is vacant land, is located in the rear (to the south) of Lot 5 and also "fronts" Rutgers Avenue.

An identically-sized parcel of property situated adjacent and immediately to the west of plaintiffs' parcel, also fronting Hamilton Avenue, and designated on the township's tax maps as Lots 4 and 4.01, in Block 1108, is owned by Oluf and June de Bang. These parcels, which are likewise considered as merged under the Berkeley Heights land use ordinance, are improved with a 1½-story dwelling. As with plaintiff's parcel, the de Bang residence is located on the larger lot fronting Hamilton Avenue, Lot 4. Lot 4.01 is in the rear (south) of Lot 4 and "fronts" on College Avenue, which at that point is unimproved. All of this property is situated within the R–15 Residential Zone of Berkeley Heights Township.

The existing Lots 5.01 and 4.01 are identical in size, 60 feet running north and south, 100 feet running east and west. Each lot contains 6,000 square feet of area, for a total between the two lots of 12,000 square feet.

Plaintiffs applied to the Board with the consent of the de Bangs to subdivide and reconfigure the existing Lots 4, 4.01, 5 and 5.01 so as to create three proposed lots 4, 5 and 5.01. Lot 5.01 would be available as a building lot.

Proposed Lot 4 would contain the existing de Bang residence and would remain as is except that a 10–foot strip along its border with existing Lot 4.01 would become part of proposed Lot 5.01.

Proposed Lot 5 would contain the existing dwelling of plaintiffs and would remain as is except that a 20–foot strip along its border with existing Lot 5.01 would become part of proposed Lot 5.01.

Proposed Lot 5.01 would consist of the existing Lots 5.01 and 4.01 plus the two strips of land referred to above. Plaintiffs proposed, subject to approval of the subdivision, to purchase the de Bangs' existing Lot 4.01 together with the 10–foot strip from existing Lot 4.

In addition to subdivision approval, plaintiffs sought a number of bulk variances and waivers from the Board. Such relief was within the Board's ancillary jurisdiction under *N.J.S.A.* 40:55D–60(a). More specifically, plaintiffs requested the following variances or waivers:

### Proposed Lot 4

This corner lot requires a minimum lot area of 16,500 square feet. The lot would contain 11,036 square feet if plaintiffs' plan is adopted. Plaintiffs propose a lot width of 100 rather than 120 feet as required under the ordinance. The proposed lot depth is 110.36 feet versus the required 130 feet. The dwelling would be set back 14.88 feet from Hamilton Avenue and 15.87 feet from College Avenue versus the required 50–foot front-yard setback.

### Proposed Lot 5

This lot would contain 10,036 square feet versus the required area of 16,500 square feet. Lot 5 would have a 100–foot width versus the required 120 feet. The lot would be 100.36 feet deep versus the required 130 feet. The dwelling would be set back 30.75 feet from Hamilton Avenue and 21.65 feet from Rutgers Avenue versus the required 50–foot setback from both streets. The dwelling would be set back 33.19 feet from the rear line versus the required 40–foot rear-yard setback.

### Proposed Lot 5.01

This lot would be 80 feet wide versus the required 100 feet.

Additionally, a waiver was requested from the requirements of an environmental impact statement and from the requirements for pavement widening, sidewalks and curbing. At the hearing Domenico A. Cicchino stated that he would like to build a new house for his family on proposed Lot 5.01 and sell his existing dwelling to his parents. He claimed that the area of the proposed new lot currently presents a maintenance prob-

lem, with litter, debris and standing water in the summer which provides a breeding ground for mosquitoes and rodents. He claimed developing the land would eliminate these problems but, nevertheless, admitted that he had not tried either to purchase any land from, or sell any property to, the adjacent landowner to the south.

Plaintiffs produced expert testimony from an engineer as to the topography of the land and water drainage and runoff conditions. They also presented testimony from a professional planner who indicated that plaintiffs' proposal is consistent with the overall pattern of development in the area and that the proposed subdivision would not produce a deleterious effect on homes surrounding plaintiffs' property. A real estate expert also supported plaintiffs' application. He claimed the subdivision and anticipated home would be consistent with other properties and would have no negative impact on the neighborhood.

Public comment generally opposed the subdivision. The neighbors were concerned with the deleterious effect of the subdivision on the value of existing homes, drainage problems, the absence of hardship and the possibility of a "domino effect" on other property owners in the area who would wish to subdivide their lots for pecuniary benefits.

Judge Pisansky fully discussed the requirements of *N.J.S.A.* 40:55D–70(c)(2). He specifically observed that the instant matter was different in several significant respects from *Kaufmann v. Planning Bd. for Warren Tp.*, 110 *N.J.* 551 (1988), which interpreted the statute. He noted that, in *Kaufmann*, Warren Township had changed its zoning ordinance to *reduce* the required lot area for the zone, whereas here, the opposite was true. Indeed, both attorneys agreed that Berkeley Heights' policy was to increase lot area requirements in the zone. Secondly, in *Kaufmann*, the planning board had granted the variance, whereas in this case, the variance had been denied. He thus affirmed the actions of the Board as to all

issues other than whether plaintiffs had satisfied *N.J.S.A.* 40:55D–70(c)(2).

With respect to *N.J.S.A.* 40:55D–70(c)(2), known as the "flexible c" provision, the trial judge relied heavily on his interpretation of *Kaufmann*. He determined plaintiffs had established that the proposed subdivision would advance the purposes of the Municipal Land Use Law. He further held that plaintiffs had shown that the benefits of the deviations resulting from the proposed application would substantially outweigh any detriment caused thereby.

With respect to the negative criteria of the statute, the trial court determined that the granting of the application would not adversely affect the surrounding property. Thus he concluded that if plaintiffs were to satisfactorily overcome the alleged drainage problem and submit a proper architectural plan of the house to be built on the property, the negative criteria would be satisfied. He, accordingly, remanded the matter to the Board, ordering it to review an architectural design of the proposed house and rule whether the proposed house will adversely affect the character of the neighborhood. This ruling was to deal with both the "desirable visual environment," which is cited in *N.J.S.A.* 40:55D–2(i) as one of the purposes of the Municipal Land Use Law, and the value of the neighborhood properties. He also ordered plaintiffs to submit a comprehensive drainage plan to the township engineer for his evaluation. The township engineer would then submit a report to the Board for their consideration.

The trial judge incorrectly reconciled the factual differences between *Kaufmann* and the present case. In *Kaufmann*, the appeal, by objecting neighbors, was from an *approval* of the planning board. Although the trial judge recognized this difference, he failed to address it adequately. Here, there was a Board *denial*. Plaintiffs in the present matter propose to create three substandard lots out of two conforming, and not substantially oversized, lots. In contrast to the planned down-

zoning in *Kaufmann*, Berkeley Heights has *reduced* the permitted density, thereby discouraging smaller lot zoning in this area of the township. The zoning requirements in the area were upgraded several years ago, on recommendation of the Board, from R–10 (10,000 square foot lots) to R–15 (15,000 square foot lots), with the requirement that corner lots be even larger.

The trial judge incorrectly found that *Kaufmann* and the present case were comparable. In direct opposition to the facts, he found that Berkeley Heights had a policy of down-zoning which was evident from (1) both ordinances and legislation and (2) what actually exists in a given area.

To support his theory that Berkeley Heights' down-zoning is evidenced by ordinance, the trial judge found support not in the current R–15 zone but in the R–20 zone for planned developments, which is unrelated to the facts of the present case. Further, in finding a policy of down-zoning was evidenced by the actual lot dimensions in Berkeley Heights, the trial judge failed to note the extent to which presently existing conditions predate the current zoning ordinances.

We find that the trial judge based his determinations solely on the opinion of plaintiffs' planning expert whose analysis compared the subject property with the existing pattern of development in the area. However, the planner's report omitted any reference to whether these substandard lots predated the current zoning upgrade. It is this factor that is crucial to the *Kaufmann* mandate, which instructs planning boards "to effectuate the goals of the community as expressed through its zoning and planning ordinances." 110 *N.J.* at 564.

The record here demonstrates that a grant of the several requested variances would primarily advance the purposes of the owners by creating a new building lot and permitting them to construct a new dwelling on it. An improved building lot in Berkeley Heights has an estimated market value of at least

$100,000. No evidence was produced showing that the community would benefit from the zoning change.

Furthermore, with respect to the detrimental effect upon the neighborhood, plaintiffs produced no evidence regarding the size and appearance of their proposed house and, thus, deprived the Board of essential data necessary to make its factual evaluation regarding detrimental impact. Plaintiffs, therefore, have wholly failed to demonstrate that their proposed subdivision could be granted without impairing the zone plan.

The trial judge, in effect, gave plaintiffs a "second bite of the apple" after they had been afforded a full opportunity to present their proposal to the Board. As they have failed to carry their burden of proving these essential elements of their subdivision and variance application, the remand was improper and the Board's decision on the negative criteria must be affirmed.

We are compelled to note that judicial review of a planning board's decision is narrow in its scope and the court may not substitute its judgment for that of the board. In essence, the trial judge here imposed his own judgment as to (1) the advancement of the purposes of the Municipal Land Use Law; (2) the benefits to be derived by the community, and (3) the impact of the requested variances on the neighborhood, rather than deferring to the discretionary judgment of the local authorities. The trial judge ignored the important finding of the Board that no down-zoning had occurred in the area since the ordinance upgrade. In reality, he "re-wrote" the zoning requirement involved and ignored or misinterpreted Berkeley Heights' policy of density reduction. In this fashion, he clearly went beyond the scope of his review.

In light of our finding that the Board's decision was entirely proper, it is unnecessary for us to address the issues raised by the cross-appeal.

Reversed and remanded for entry of judgment dismissing the complaint.